1   M. Benjamin Eichenberg (Bar No. 270893)
2   Nicole C. Sasaki (Bar No. 298736)
    SAN FRANCISCO BAYKEEPER
3   1736 Franklin Street, Suite 800
    Oakland, California 94612
4   Telephone: (510) 735-9700
    Facsimile: (510) 735-9160
5   Email: ben@baykeeper.org
6            nicole@baykeeper.org

7   Attorneys for Plaintiff
    SAN FRANCISCO BAYKEEPER
8

9                           UNITED STATES DISTRICT COURT
10
                          NORTHERN DISTRICT OF CALIFORNIA
11
                                SAN FRANCISCO DIVISION
12

13
    SAN FRANCISCO BAYKEEPER, a non-profit        Civil No. 3:19-cv-07518-RS
14  corporation,
15              Plaintiff,                        STIPULATED REQUEST TO ENTER
16                                                CONSENT DECREE AND
         v.                                       DISMISSAL; ORDER
17
    AIR PRODUCTS MANUFACTURING                    (Federal Water Pollution Control Act, 33
18  CORPORATION; and AIR PRODUCTS AND             U.S.C. § 1251 et seq.)
    CHEMICALS, INC.,
19
                                                  Honorable Richard Seeborg
20              Defendant.
21

22

23

24

25

26

27

28

---

Plaintiff San Francisco Baykeeper ("Plaintiff") and Defendant Air Products Manufacturing Corporation; and Air Products and Chemicals, Inc., ("Defendant") (collectively, the "Parties"), hereby stipulate to the following:

WHEREAS, on October 13, 2020, the Parties notified the Court that the Parties had executed a [Proposed] Consent Decree in this action, attached hereto as Exhibit A, and served copies of it via electronic mail to the U.S. Department of Justice and U.S. Environmental Protection Agency for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5 (*see* Dkt. No. 21);

WHEREAS on October 14, 2020, the Court issued a Standby Order of Dismissal vacating all pre-trial and trial dates and requiring a stipulation of dismissal by January 21, 2021 (*see* Dkt. No. 30);

WHEREAS on December 2, 2020, the U.S. Department of Justice notified the Parties via electronic mail, attached hereto as Exhibit B, that it does not object to the [Proposed] Consent Decree;

WHEREFORE, the Parties hereby stipulate and request that the Court approve and enter the [Proposed] Consent Decree as an Order of the Court, order that the above-captioned action be dismissed in its entirety with prejudice with regard to Defendant, and retain jurisdiction over the Parties for the sole purpose of enforcing compliance with the terms of the [Proposed] Consent Decree until the [Proposed] Consent Decree terminates;

NOW, THEREFORE, IT IS HEREBY STIPULATED between the Parties that the Parties respectfully request the Court to approve and enter the [Proposed] Order attached hereto and vacate the case management conference and all other deadlines in this matter.

DATE: December 2, 2020         Respectfully Submitted,

By:       /s/Ben Eichenberg
_____
M. BENJAMIN EICHENBERG
Attorney for Plaintiff

DATE: December 2, 2020      By:     /s/ Molly Coyne
_____
Molly Coyne
Attorney for Defendant

**ORDER**

**IT IS HEREBY ORDERED** that the Consent Decree, attached hereto as Exhibit A, is fully incorporated herein by reference and is entered as an Order of the Court.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction over AIR PRODUCTS MANUFACTURING CORPORATION; and AIR PRODUCTS AND CHEMICALS, INC., for the sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the Consent Decree until the Consent Decree terminates.

**IT IS FURTHER ORDERED** that the case management conference and all other deadlines are vacated.

**IT IS FURTHER ORDERED** that the above-captioned action against AIR PRODUCTS MANUFACTURING CORPORATION; and AIR PRODUCTS AND CHEMICALS, INC., is dismissed with prejudice.

**IT IS SO ORDERED.**

Date: December 2, 2020

NORTHERN DISTRICT OF CALIFORNIA

Honorable Richard Seeborg
United States District Court

EXHIBIT A

M. Benjamin Eichenberg (Bar No. 270893)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: ben@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>AIR PRODUCTS MANUFACTURING CORPORATION; and AIR PRODUCTS AND CHEMICALS, INC.,<br><br>Defendant. | Civil No. 3:19-cv-07518-RS<br><br>CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br>Honorable Richard Seeborg |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and Defendant Air Products Manufacturing Corporation and its parent company, Air Products and Chemicals, Inc. (collectively, "Defendant" or "Air Products"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

WHEREAS, San Francisco Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California;

WHEREAS, Baykeeper's mission is to protect and enhance the water quality and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of its ecosystems and communities on behalf of Baykeeper's approximately 3,500 members that live and/or recreate in and around the San Francisco Bay Area;

WHEREAS, Air Products operates an industrial gas facility located at 1515 Norman Avenue in Santa Clara, California (the "Facility");

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ (hereinafter "Industrial General Permit" or "IGP"), issued pursuant to Section 402 of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. § 1342.  These industrial activities include, *inter alia*, gas production of Nitrogen, Oxygen and Argon, operation of oil- and diesel-filled operating equipment, operation of refrigerant-filled operating equipment, miscellaneous loading and unloading operations or transfers, waste management, operation of transformers, operation of oil/water separators, above-ground bulk chemical storage, underground diesel storage, parking, vehicle equipment maintenance and repair, equipment and parts storage, underground waste oil storage, and operation of cooling towers.

WHEREAS, the Industrial General Permit includes the following requirements for all permittees, including Air Products: (1) develop and implement a stormwater pollution prevention plan (SWPPP), (2) control pollutant discharges using, as appropriate, best available technology economically achievable

(BAT) or best conventional pollutant control technology (BCT) to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices (BMPs), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on or around September 9, 2019, Baykeeper served Air Products, the Administrator of the U.S. Environmental Protection Agency (EPA), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial General Permit at the Facility;

WHEREAS, on November 14, 2019, Baykeeper filed a complaint against Air Products in the United States District Court, Northern District of California, Civil Case No. 5:19-cv-07518-NC;

WHEREAS, Baykeeper alleges Air Products is in violation of the substantive and procedural requirements of the Industrial General Permit and the Clean Water Act;

WHEREAS, Air Products denies all allegations and claims contained in the 60-Day Notice and the complaint and reserves all rights and defenses with respect to such allegations and claims;

WHEREAS, the Settling Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and complaint through settlement and avoid the cost and uncertainties of litigation;

WHEREAS, the Settling Parties acknowledge the practical difficulties posed by the COVID-19 pandemic in setting forth a firm compliance schedule, and commit in good faith to comply with the provisions of this agreement as soon as is reasonably possible;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED BY AND DECREED BY THE COURT, AS FOLLOWS:

### I.  OBJECTIVES

1.    It is the express purpose of the Settling Parties to further the objectives set forth in the Clean

Water Act, 33 U.S.C. §§ 1251 *et seq*., and to resolve those issues alleged by Baykeeper in its 60-Day Notice and complaint.  In light of these objectives and as set forth fully below, Air Products agrees to comply with the provisions of this Consent Decree and to comply with the Industrial General Permit and all applicable provisions of the Clean Water Act.

## II.  TERM OF CONSENT DECREE

2.   **Effective Date**:  The Effective Date of this Consent Decree shall be the date of entry of this Consent Decree by the court.

3.   **Term of Consent Decree**:  This Consent Decree shall continue in effect until January 31, 2024 or the Consent Decree may terminate at an earlier date upon thirty (30) days from written notice to Baykeeper that the average, where such averages are prescribed by the Industrial General Permit, of one (1) reporting year, consisting of one (1) 12-month independent averaging period of not fewer than four (4) samples in accordance with Paragraph 13.A, with no pH violations, of consecutive samples meets the Numeric Action Levels ("NALs") in the IGP for heavy metals, nitrite + nitrate, and total suspended solids (see Table 1, below), whichever is sooner (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate, unless one of the Settling Parties has invoked, in good faith, Dispute Resolution in accordance with Paragraph 23.

4.   **COVID-19 Provision**:  This Consent Decree is drafted in an uncertain time.  At present, most Californians are prohibited from going to their workplaces and gathering in groups, and it is unknown how long the restrictions will continue.  Some "re-opening" is occurring, but a recent spike in cases and hospitalizations may result in further restrictions.  In recognition of this fact, the Settling Parties agree that all deadlines and obligations in this Consent Decree may be continued if delays are caused by such restrictions.  Upon determining that such a delay has been caused by the restrictions, Air Products shall notify Baykeeper of the cause and the delay.  In no case shall delays be extended beyond the date upon which state and local authorities lift all COVID-19 restrictions practically related to the requested delay on individuals and businesses ("End of COVID Restrictions").

5.   **Early Termination**:  If Air Products should cease industrial operations at the site and file a Notice of Termination (NOT) under the Industrial General Permit prior to the termination date of this Consent Decree, Air Products shall send Baykeeper a copy of the proposed NOT concurrent with its

submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT, Air Products shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, pursuant to Paragraphs 20-22 and 24.  In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 41, Air Products shall notify Baykeeper within ten (10) days of the transition.

### III.  BEST MANAGEMENT PRACTICES

6.     Baykeeper acknowledges that since the Complaint was filed, Air Products has already taken actions to reduce or prevent pollutants in its stormwater discharges.  Specifically, Air Products has completed a stormwater pipe connection between Outfall 1 and Outfall 2, such that all stormwater is now directed to Outfall 1.  Air Products has also completed paving of the area around current drain inlet number 12, which was done in the process of eliminating Outfall 2.

7.     In order to further reduce or prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Air Products shall implement additional appropriate structural and non-structural BMPs to, at a minimum, comply with the requirements of the Industrial General Permit.

8.     **Non-Structural Best Management Practices**.  Beginning on the Effective Date, unless otherwise stated, Air Products shall implement all BMPs currently identified in the Facility's SWPPP and the following additional non-structural BMPs:

   A.  Storm Drain Inlet/Catch Basin Best Management Practices:

       i.     Storm Drain Inlet/Catch Basin Inspections:  Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, Air Products shall inspect any discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility.  Air Products shall promptly clean, as needed, each discharge and sampling point, and each filtration/treatment device, in order to remove any accumulated dust, sediment, solids, or debris.

       ii.    Storm Drain Inlet/Catch Basin Maintenance and Cleaning:  On a monthly basis between October 1 to May 31 of each year ("Wet Season"), Air Products shall inspect all discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they

are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment, trash or debris.  Air Products shall properly dispose of any dust, sediment, trash, debris, or other removed pollutants.

        iii.        <u>Log of Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning</u>: Air Products shall prepare and maintain a log of the Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed.  The Maintenance Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

        B. **Site Sweeping**:  Air Products shall mechanically sweep all paved areas of the Facility at least once per year, in August prior to the Wet Season.

        C. **Vehicle and Equipment Maintenance**:  Air Products shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events, other than those areas Air Products has designated on its site map as vehicle maintenance areas.  Air Products' designated vehicle maintenance areas, both indoor and outdoor, shall be drained to oil-water separators, and shall not discharge to storm drains.

9.    **Structural Best Management Practices:**  Air Products shall develop and implement the following structural BMPs with references to features portrayed in the site map attached hereto as Exhibit 1:

        A. **Advanced Treatment System:**  Air Products shall evaluate, select, design, test, construct and install an Advanced Treatment System to treat stormwater collected from the Facility according to the following schedule: Air Products shall use its best efforts to complete civil construction related to the Advanced Treatment System by October 23, 2020.  Air Products shall use its best efforts to select an Advanced Treatment System by November 20, 2020.  Air Products shall use its best efforts to install the Advanced Treatment System by March 12, 2021. By April 1, 2021, Air Products expects to begin to treat stormwater collected from the Facility sufficient to achieve the NALs in the IGP for heavy metals, nitrite + nitrate, total suspended solids, and pH as described in Table 1 below.  If there are any pH

1  violations, or averaged sampling results, where such averages are prescribed by the IGP, from the first

2  two (2) qualified storm events after installation of the Advanced Treatment System exceed the NALs,

3  then Air Products will adjust this Advanced Treatment System or add other BMPs targeting such

4  exceeded NALs to further optimize the Advanced Treatment System within thirty (30) days of receipt of

5  the laboratory report from the second qualified storm event.

6      B.   On December 15, 2020, the parties shall meet and confer regarding the progress made

7  towards implementing the Advanced Treatment System.  Air Products shall notify Baykeeper promptly

8  if Air Products becomes aware of any delays that would prevent Air Products from meeting any of the

9  above target dates.

10      C.   **Diligent Implementation of BMPs:**  Air Products shall diligently file and pursue all

11  required permit applications for the structural BMPs and shall diligently procure contractors, labor, and

12  materials needed to complete all structural BMPs by the required deadlines.

13      D.   **Maintenance of BMP Structural Controls:**  Beginning on the Effective Date or the date

14  of installation, Air Products shall maintain all structural BMPs at the Facility in good operating

15  condition and shall promptly repair any damaged or degraded structural BMPs.

16  10.   **Employee Training:**  Air Products shall develop and implement an employee training program

17  in accordance with its SWPPP and the IGP.

18  11.   Amendment of SWPPP:

19      A.   No later than thirty (30) days after the Effective Date, Air Products shall amend the

20  Facility SWPPP and submit it to Baykeeper.  Baykeeper shall provide Air Products with any comments

21  on the Amended SWPPP within thirty (30) calendar days.  If there are no comments within the thirty-

22  day period, Air Products shall submit the Amended SWPPP to the Storm Water Multiple Application

23  and Report Tracking System (SMARTS), with concurrent notice to Baykeeper.

24      i.   The amended Facility SWPPP shall incorporate the requirements and BMPs set

25  forth in Section III of this Consent Decree and Section X of the Industrial General Permit.

26      ii.   The amended Site Map shall comply with the Industrial General Permit, Section

27  X.E.  Specifically, the Site Map shall clearly denote:  (a) the topography and the direction of stormwater

28  flow for each drainage area of the Facility, (b) property boundaries, (c) known or suspected drop inlets,

1    (d) ground type (pervious or impervious), (e) berms and the materials they are composed of, (f) any

2    permanent structures and features, (g) discharge points, (h) sampling points, and (i) all other physical

3    structures or items relevant under the Industrial General Permit and this Consent Decree.

4              iii.        Baykeeper shall have thirty (30) days from receipt of the amended Facility

5    SWPPP and Site Map to propose any changes to the amended Facility SWPPP or Site Map.  Within

6    fifteen (15) days of receipt of Baykeeper's comments, Air Products shall duly consider all of

7    Baykeeper's proposed changes and incorporate those changes Air Products deems reasonable and

8    appropriate.  Air Products shall notify Baykeeper within fifteen (15) days of receipt of Baykeeper's

9    comments of any of their comments that will not be implemented.  Baykeeper may then request a meet

10   and confer in accordance with Paragraph 23 to discuss Air Products' notification within fifteen (15) days

11   of receipt.  Compliance with the Facility SWPPP, as amended in accordance with this Paragraph, shall at

12   all times be a requirement of this Consent Decree.

13             iv.        During the term of the Consent Decree, Air Products shall revise the Facility

14   SWPPP and Site Map if there are any material changes to the Facility's operations, including but not

15   limited to, moving a discharge or sampling point, modifying the topography of the site so as to change a

16   drainage area, or removing or adding structural BMPs.  Within forty-five (45) days of the material

17   change, Air Products shall revise the Facility SWPPP and/or Site Map, submit the revised Facility

18   SWPPP and/or Site Map to Baykeeper, and upload the revisions to the SMARTS database.

19             v.        Baykeeper may provide comments to or seek clarification of any revised Facility

20   SWPPP or Site Map within thirty (30) days of receipt.  Within fifteen (15) days of receipt of

21   Baykeeper's comments, Air Products shall duly consider all of Baykeeper's proposed changes and

22   incorporate those changes Air Products deems reasonable and appropriate.  Air Products shall notify

23   Baykeeper within fifteen (15) days of receipt of Baykeeper's comments of any of their comments that

24   will not be implemented.   Baykeeper may then request a meet and confer under Paragraph 23 to discuss

25   Air Products' notification within fifteen (15) days of receipt.  Air Products shall upload the revised

26   Facility SWPPP or Site Map to SMARTS within thirty (30) days of finalizing revisions in accordance

27   with this Consent Decree.  Compliance with the Facility SWPPP, as revised in accordance with this

28   Paragraph, shall at all times be a requirement of this Consent Decree.

12.   **Additional BMPs**:  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first Wet Season of the agreement.  If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the NALs, or otherwise do not meet water quality standards, Air Products shall propose additional BMPs as part of any Action Plan prepared in accordance with Paragraph 14.

### IV.  SAMPLING, MONITORING, INSPECTION & REPORTING

13.   Sampling Program - Stormwater:

A.  Beginning with the 2020-2021 Wet Season, Air Products shall continue to sample, monitor, inspect, and report stormwater discharges in accordance with the IGP and the facility's SWPPP.  Each stormwater sample must be analyzed for the presence of each of the parameters listed in Table 1 below.  NALs shall be annual averages as described in the IGP.

| Table 1: Numerical Action Levels | | |
|---|---|---|
| **Parameter** | **Units** | **Consent Decree Action Level** |
| pH | SU | < 6 or > 9 |
| Total Suspended Solids | mg/L | 100 average /400 instantaneous |
| Aluminum Total | mg/L | 0.75 |
| Iron Total | mg/L | 1.0 |
| Nitrite + Nitrate (as Nitrogen) | mg/L | 0.68 |

B.  **Certified Lab**:  Except for pH samples, Air Products shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the NALs.  Such analysis shall be completed by a California State certified environmental laboratory, and Air Products will furnish such certification to Baykeeper upon request.

C.  **Sample Result Reporting**:  After the Effective Date, Air Products shall provide complete results from sampling and analysis to SMARTS and Baykeeper in accordance with the IGP.

D. **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the term of this Consent Decree after the installation of the Advanced Treatment System, Air Products shall prepare and send to Baykeeper an End-of-Season Summary that includes:  (1) a summary chart or table with all of the sample results from the previous Wet Season including the constituent concentration(s) from sample(s) collected at the Facility exceeding the NALs ("Exceedance(s)"); and (2) identification of any new BMP(s) that Air Products has implemented or will implement not already discussed in a prior End-of-Season Summary or Action Plan for the immediately previous Wet Season.

14.    **Action Plan**:  If averages, where such averages are prescribed by the IGP, show Exceedances at the Facility after the treatment system is installed, Air Products shall submit an Action Plan in addition to an End-of-Season Summary by August 15 following the Wet Season.

15.    **Contents of Action Plan**:  If an Action Plan is required, it shall include the following:

A.  The possible sources of the Exceedance(s) during the applicable Wet Season;

B.  A proposal for and evaluation of new site-specific BMPs designed to mitigate the risk of Exceedance(s) in the future;

C.  Data, drawings, and other design rationale for the proposed site-specific BMPs; and

D.  A schedule to implement any revised and/or additional BMPs by the earliest practicable time, with a target of October 15 of the next Wet Season.  In any Action Plan, Air Products shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

16.    **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  However, if Baykeeper notifies Air Products within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Baykeeper shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, Air Products shall finalize the proposed Action Plan considering any of Baykeeper's comments that Air Products deems reasonable and appropriate, and then immediately begin to implement the Plan and notify Baykeeper within fifteen (15) days of receipt of Baykeeper's comments of any of their comments that will not be implemented. Baykeeper may then timely request a meet and confer under Paragraph 23 of the Order to discuss Air Products notification within fifteen (15) days of receipt.

17.     During each Wet Season, Air Products has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if the NALs are exceeded, make attempts to reduce the concentrations to NALs for the remainder of the Wet Season.  Air Products shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

18.     **Site Access**:  During the Term of this Consent Decree, Air Products shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during normal business hours (8am-4pm, Monday through Friday) ("Site Inspection").  Baykeeper shall provide Air Products forty-eight (48) hours' notice in advance of such Site Inspections.  Baykeeper shall comply with all safety instructions provided to Baykeeper by Air Products' staff during all Site Inspections. During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, inspect any logs, and take photos and/or videos of the stormwater treatment system. Baykeeper shall abide by Air Products' policies regarding restricted photo locations and providing copies of any videos or photos taken to Air Products.

19.     **Reports**:  During the Term of this Consent Decree, Air Products shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board, the State Water Board, or any other government agency concerning the Facility's compliance with the Industrial General Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the government agency.

## V.  MITIGATION, FEES, AND COSTS

20.     **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's 60-Day Notice and complaint Air Products shall pay the sum of twenty-seven thousand, five hundred dollars ($27,500) to the Rose Foundation for Communities and the Environment ("Rose Foundation"), an environmental non-profit organization, for projects that will benefit the San Francisco Bay-Delta watershed.  The Rose Foundation reports the grant funding made with the tendered funds to the U.S. Department of Justice and the Settling Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102 Oakland, California 94607 within thirty (30) days of the Effective Date, with notice to

Baykeeper.

21.   **Reimbursement of Fees and Costs**:  Air Products shall reimburse Baykeeper in the amount of fifty-three thousand, four hundred seventeen dollars and sixty-two cents ($53,417.62) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Air Products' attention, and negotiating a resolution of this action.  Payment shall be made to Baykeeper within thirty (30) days of the Effective Date.

22.   **Compliance Monitoring Funds:**  Air Products shall provide to Baykeeper five thousand dollars ($5,000) for costs and fees associated with each year of monitoring Air Products' compliance with this Consent Decree through the termination date of this agreement.  Such payments shall not exceed $15,000 in total.  Payment of the first installation of $5,000 shall be made to Baykeeper within thirty (30) days of the Effective Date.  Additional payment installations of $5,000 each shall be made to Baykeeper by June 30 of each year during the term of the Consent Decree.

## VI.DISPUTE RESOLUTION AND STIPULATED PAYMENTS

23.   **Dispute Resolution**:  If a dispute under this Consent Decree arises or the Settling Parties believe that a breach of this Consent Decree has occurred, they shall follow the following procedure:

A.  The Settling Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Settling Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually-agreeable plan, including implementation dates, to resolve the dispute.

B.  If the Settling Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Consent Decree.

C.  The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

24.   **Stipulated Payments:**  Following seven (7) days notice and opportunity to cure, Air Products shall pay the following stipulated payments during the Term of this Consent Decree.

     A.  $1,000 for each failure to collect a sample required under this Consent Decree;

     B.  $500 per day after the due date for each failure to timely submit any document, report or other communication required in this Consent Decree;

     C.  $500 per day for every business day (Monday through Friday, excluding state and federal holidays) past the due date that Air Products fails to submit any payments due under Paragraphs 20-22 of this Consent Decree.

     D.  $500 per day for every day past the due date that Air Products fails to install or implement a BMP required by this Consent Decree.

     E.  Any stipulated payments described above shall be paid within thirty (30) days of notification of the failure to comply, made out to Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102 Oakland, California 94607, with a copy of payment sent concurrently to Baykeeper.  Stipulated payment funds will be used by the Rose Foundation to fund projects that benefit the water quality in the San Francisco Bay-Delta watershed.

## VII.  JURISDICTION OVER SETTLING PARTIES AND SUBJECT MATTER OF CONSENT DECREE

25.   **Jurisdiction.**  For the purposes of this Consent Decree, the Settling Parties stipulate that the United States District Court, Northern District of California, has jurisdiction over the Settling Parties and subject matter of this Consent Decree.  The Settling Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

26.   **Jurisdiction to Enforce Consent Decree.**  The Court referenced above shall retain jurisdiction over the Settling Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

27.   **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the

Settling Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice (DOJ) and EPA for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## VIII.  WAIVER AND RELEASES

28.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Air Products, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed.

29.   **Air Products' Waiver and Release of Baykeeper**:  Air Products, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns releases Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed.

## IX.  MISCELLANEOUS PROVISIONS

30.   **Execution in Counterparts**:  This Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

31.   **Signatures**:  The Settling Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

32.   **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

33.   **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of

their respective Settling Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

34.   **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Consent Decree are contained herein.

35.   **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

36.   **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

37.   **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.

38.   **Effect of Consent Decree**:  Compliance with this Consent Decree does not mean Air Products is complying with the Industrial General Permit, Clean Water Act, or any other law, rule, or regulation.

39.   **Negotiated Agreement**:  The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Settling Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Settling Party.

40.   **Modification of the Agreement**:  This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Settling Parties.

41.   **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns.

42.   **Notices and Submissions**:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

San Francisco Baykeeper
Attention: Nicole Sasaki

1736 Franklin Street, Suite 800
Oakland, California 94612
E-mail:  nicole@baykeeper.org

Unless requested otherwise by Air Products, any notices or documents required or provided for

by this Consent Decree or related thereto that are to be provided to Air Products pursuant to this Consent

Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses

listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt,

or by hand delivery to the addresses below:

Air Products Manufacturing Corporation
Attn: Michael Chau
        Scot Govert
1515 Norman Ave.,
Santa Clara, CA 95054
Email: govertsc@airproducts.com
Email: chaumv@airproducts.com

 With a copy to:

Molly Coyne
Paul Hastings LLP
101 California Street, Forty-Eighth Floor
San Francisco, CA 94111
Email: mollycoyne@paulhastings.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or

postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any

changes of address or addressees shall be communicated in the manner described above for giving

notices.

43.   **Deadlines Falling on Non-Business Days:**  Any deadlines relating to this Consent Decree

which fall on the weekend or on a federal holiday shall be extended to the following business day.

44.   **Force Majeure:** Air Products shall notify Baykeeper pursuant to the terms of this Paragraph

where implementation of the requirements set forth in this Consent Decree becomes impossible due to a

Force Majeure Event.  "Force Majeure Event," for purposes of this Consent Decree, is defined as any

event, circumstance, condition or situation arising from causes beyond the control of Air Products or of

any entity controlled by Air Products, including, but not limited to, their contractors and subcontractors,

that delays or prevents the performance of any obligation under this Consent Decree despite Air

Products' best efforts to fulfill the obligation.  The requirement that Air Products exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any Force Majeure Event and best efforts to address the effects of any Force Majeure Event (1) as it is occurring, and (2) following the occurrence of the Force Majeure Event, such that the delay is minimized to the greatest extent practicable.  Any delays due to inadequate funding, Air Products' failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits, or normal inclement weather shall not, in any event, be considered to be circumstances beyond Air Products' control.

A.  If Air Products claims impossibility, it shall notify Baykeeper in writing within ten (10) days of the date that Air Products first knew of the event or circumstance or should have known of the event or circumstance by the exercise of due diligence and shall describe the reason for the non-performance.  Air Products' notice shall specifically refer to this Paragraph of this Consent Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Air Products to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.

B.  The Parties shall meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Air Products due to circumstances beyond the control of Air Products that could not have been reasonably foreseen and prevented by the exercise of due diligence by Air Products, new performance requirements or deadlines shall be established.

C.  If Baykeeper disagrees with Air Products' notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either Party shall have the right to invoke the Formal Dispute Resolution process in this Consent Decree.  In such proceeding, Air Products shall bear the burden of proving that any delay of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

APPROVED AS TO CONTENT

1   SAN FRANCISCO BAYKEEPER

2   Date:   10/7/20

3

4   By:

5   Sejal Choksi-Chugh
    Executive Director, San Francisco Baykeeper

6

7   AIR PRODUCTS MANUFACTURING CORPORATION

8   Date:   10/9/2020

9

10

11  By:   TIM SCHOENBORN
    Title:   VP & GM — WEST REGION

12

13  APPROVED AS TO FORM

14                                      SAN FRANCISCO BAYKEEPER

15
    Dated:   10/7/20   , 2020          By:
16                                      Ben Eichenberg
17                                      Attorney for Plaintiff

18

19                                      PAUL HASTINGS LLP

20  Dated:   October 7   , 2020        By:   Peter H. Weiner
                                        Peter Weiner
21                                      Attorney for Defendant

22

23  **IT IS SO ORDERED.**               UNITED STATES DISTRICT COURT
                                        NORTHERN DISTRICT OF CALIFORNIA
24

25  Date:   December 2, 2020

26

27                                      Honorable Richard Seeborg
                                        United States District Judge
28

EXHIBIT B



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-05419

_____

*Law and Policy Section*                                                    *Telephone (202) 514-1442*
*P.O. Box 7415*                                                             *Facsimile (202) 514-4231*
*Washington, DC  20044-7415*

December 2, 2020

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
Northern District of California, San Jose Division
280 South 1st Street, Room 2112
Santa Jose, CA 95113

　　　　　Re:　　*San Francisco Baykeeper v. Air Products Manufacturing Corporation et al* (N.D.
　　　　　　　　　Cal.), Case No. 3:19-CV-07518

Dear Clerk of Court:

　　　　I am writing to notify you that the United States has reviewed the proposed consent
judgment in this action and does not object to its entry by this Court.

　　　　On October 13, 2020, the Citizen Suit Coordinator for the Department of Justice received
a copy of the proposed consent judgment in the above-referenced case for review pursuant to
Clean Water Act, 33 U.S.C. § 1365(c)(3).[1]  This provision provides, in relevant part:

　　　　　No consent judgment shall be entered in an action in which the United States is
　　　　　not a party prior to 45 days following the receipt of a copy of the proposed
　　　　　consent judgment by the Attorney General and the Administrator.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of
Justice).  A settlement that does not undergo this federal review process is at risk of being void.

_____

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad
meaning and encompasses all instruments entered with the consent of the parties that have the
effect of resolving any portion of the case. For example, a document stipulating to dismissal of a
case of any part thereof is within the scope of this language. Such documents and any associated
instruments must be submitted to the United States and the court for review, notwithstanding any
provisions purporting to maintain the confidentiality of such materials. The Department
monitors citizen suit litigation to review compliance with this requirement.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, and/or injunctive relief to deter future violations, or combinations of the above.

Given the facts of this case, the United States has no objection to the proposed consent judgment. The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. *See* 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at (202) 353-0132 if you have any questions.

Sincerely,

*/s/ Stacy Stoller*

_____
Stacy Stoller, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-4390

cc:      Counsel on Record via ECF